GOODRICH, P. J. During the night of April 11, 1898, a store in Nyack, belonging to one Scanlon, was broken into, and two bicycles and other property of the value of $70 were removed. They were subsequently found in a cellar of a house on the adjacent lot, known as the "Bogardus Lot." The only testimony which connects the defendant with the crime is that at about 1 o'clock on the night above mentioned he was seen in the company of his co-defendant, Connors, a few hundred feet distant from the premises broken into, and that about half an hour later he met Connors near the premises after the latter had jumped over the fence into the street from the Bogardus lot, and that there was a patch of mud on Cronk's trousers similar to the mud in the cellar. There was ample evidence to show that a burglary had been committed on the Scanlon premises, but the evidence is not sufficient to connect the defendant with the crime.

In People v. Fielding (decided at the present term of the court of appeals) 53 N. E. 497, that court said:

"The defendant may be guilty, but, in our opinion, he has not been adjudged guilty in accordance with the law. If we disregard a sound and well-established rule in his case because we think he is guilty, we tear down one of the safeguards provided by society for the protection of its citizens, and the precedent may at some time aid in depriving an innocent man of his liberty or his life."

That the defendant Cronk was near the scene of the burglary, and that he was afterwards in company with Connors, who was seen coming from the premises, are simply suspicious circumstances; but they do not afford evidence sufficient to establish the fact that the defendant was guilty of the crime charged in the indictment. As to the mud on the defendant's trousers, the evidence of the officer who testified to the fact shows that similar mud was common to all the streets of Nyack. In our opinion, the evidence, which was purely circumstantial, was insufficient to warrant a conviction. Under section 410 of the Code of Criminal Procedure, the court might have advised the jury to acquit the defendant, and the jury are required to follow his advice. We think that course should have been pursued.

The judgment against the defendant Cronk must be reversed. All concur; CULLEN and BARTLETT, JJ., in result.

---

(38 App. Div. 604.)

PEOPLE ex rel. CRYSTAL WATER CO. OF EDGEWATER v. COLER et al.

(Supreme Court, Appellate Division, Second Department. March 14, 1899.)

TAXATION—STATUTES—REPEAL—CERTIORARI.

The general tax law (Laws 1896, c. 908), repealing the pre-existing general law (Laws 1880, c. 269), and requiring the assessment roll to be filed by September 1st with the town clerk for public inspection, and limiting application for certiorari to 15 days from such filing and posting of notice thereof, did not repeal Laws 1892, c. 489, § 8, as amended by Laws 1896, c. 286, requiring the roll in the county of Richmond to be delivered to the board of assessors by November 1st, and reserving all remedies then afforded for erroneous assessments, nor so much of Laws 1880, c.

269 as was referred to and adopted in the special law for Richmond county.

Appeal from special term, Kings county.

Certiorari by the people, on the relation of the Crystal Water Company of Edgewater, against Bird S. Coler, as comptroller of the city of New York, and others. There was an order vacating the writ, and relator appeals. Affirmed.

The following is the opinion of the court below (WARD, J.):

The application for the writ of certiorari herein does not seem to have been made within the time prescribed by law. The assessment roll was filed in the office of the board of assessors of the county of Richmond on October 30. 1897; and public notice thereof given on that day, but the writ of certiorari was not applied for until July 18, 1898. Section 8 of the Laws of 1892 (chapter 489), as amended by chapter 286 of the Laws of 1896, which is a special act relating to the county of Richmond, provides that "in the county of Richmond the time when the completed assessment rolls shall be delivered to the proper officer, to remain with him for a period of fifteen days for public inspection, shall be on or before the first day of November, and the proper public officer shall be deemed to be the board of county assessors at their office." This act, which prescribes the time and place of filing the completed assessment rolls in the county of Richmond, was made in contemplation of the general act of 1880 (Laws 1880, c. 269), and must be read in connection with the provisions of that act. Section 9 of the act of 1880 provides that: "All assessment rolls, when finally completed and verified by the assessors, shall in towns, on or before the first day of September, and in incorporated villages and cities at the time prescribed by their respective charters, or laws applicable to them, be delivered to the town, village or city clerk, or other officer to whom such rolls are, or may be required by law to be delivered, and there to remain with such clerk or other officer for a period of fifteen days for public inspection. * * * The fifteen days from which to complete the time within which the application for the writ of certiorari can be made under this act shall be the time when said public notice is first given." The special act of 1896, above referred to, expressly preserved "all remedies now afforded by law to owners of property for erroneous assessments or valuations * * * subject to the changes made therein hereby" (section 8), and repealed all acts "inconsistent with or repugnant to the provisions of this act so far as the same affects the county of Richmond" (section 13). This special act became a law before the general tax law (Laws 1896, c. 908), which repealed the preexisting general law (Laws 1880, c. 269), and required "the assessment roll, when thus completed and verified, to be filed on or before September first in the office of the town or city clerk, there to remain for fifteen days for public inspection," etc. (section 38), and limited the time for applying for a writ of certiorari to "fifteen days after the completion and filing of the assessment roll and the first posting or publication of the notice thereof, as required by this chapter" (section 251). The relator claims that the completed assessment roll in this action was never properly filed, for the reason that it was not filed in the office of the town or city clerk, as provided by the general tax law of 1896, last cited, and that, in order to limit the time within which a writ of certiorari might be applied for, the assessors of Richmond county should have complied with the provisions of section 251 of said general tax law of 1896, and that no other filing than that prescribed by the general law could be effectual to limit the period within which the relator must apply for the writ. The adoption of this construction would bring the provisions of the general law in conflict with those of the special act relating to the county of Richmond, which the former did not repeal. The rule of procedure prescribed by the act of 1880 was in existence when the special act of 1896 (chapter 286) was passed, and has been continued in force by that act, so far as the latter referred to and adopted it, although the earlier act was afterwards repealed. End. Interp. St. par. 492. The assessment roll was properly filed on the 30th day of October, 1897, in the office of the board of the county assessors of the

county of Richmond, and the notice on that day posted limited the time to apply for a writ of certiorari to fifteen days from the time when such public notice was first given. It follows that, the time prescribed by law having expired before application was made for this writ of certiorari, the motion to vacate said writ must be granted for this reason, without considering the objections made to the sufficiency of the petition upon which the writ was based.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Edward B. Hill, for appellant.
William J. Carr, for respondents.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on the opinion of WARD, J., at special term.

---

(38 App. Div. 344.)

BENECKE et al. v. HAEBLER et al.

(Supreme Court, Appellate Division, First Department.  March 24, 1899.)

1. GUARANTY—WHAT CONSTITUTES—LETTERS OF CREDIT.
    Plaintiffs were requested by prospective consignees to issue a letter of credit to the shipper, by the terms of which they obligated themselves to pay drafts not exceeding a certain amount when drawn by the shipper in payment for the goods, accompanied by bills of lading and original invoice.  Held, that plaintiffs were not mere guarantors of the drafts.
2. BANKS AND BANKING—LETTERS OF CREDIT—DRAFTS—ACCEPTANCE.
    Neither the request to plaintiffs nor the letter of credit defined the quality of goods to be shipped.  The shipper attached a bill of lading and original invoice to a draft, which was accepted by plaintiffs.  The consignees received the bill of lading and original invoice from plaintiffs, and issued to them a letter of lien, wherein they agreed to hold the merchandise or its proceeds as the property of plaintiffs until they were repaid the amount of the acceptance.  The consignees thereafter refused to accept the goods because the quality was inferior.  Plaintiffs thereafter paid the draft, and took possession of the goods under their letter of lien, and caused the same to be sold after notice to the consignees; failing to realize as much as they had paid out on the draft.  Held, that plaintiffs were under no obligation to examine the merchandise before accepting the draft, and hence they might recover the deficiency from the consignees.
3. CONTRACTS—BREACH—ACCRUAL OF CAUSE OF ACTION.
    A statement made by one who is liable to pay a debt at a future day to the creditor that he will not pay the debt when it becomes due is not such a breach of contract as will support an action before the debt becomes due.
4. PLEDGE—SALES—LIABILITY OF PLEDGEE.
    One who holds merchandise as collateral may determine when it shall be sold, and he is not liable for a depreciation in its market value occurring while it is in his hands.

Appeal from judgment on report of referee.
Action by Charles Victor Benecke and another against Theodore Haebler and another.  From a judgment in favor of plaintiffs entered on the report of a referee, defendants appeal.  Affirmed.

The following is the opinion of the court below (ODELL, Referee):